UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Duston Miller,

    Plaintiff

v.

Charles Daniels, et al.,

    Defendants

Case No.: 2:23-cv-00764-JAD-DJA

**Order Granting Defendants' Motion for Summary Judgment based on Lack of Exhaustion**

[ECF No. 26]

    Duston Miller sues Charles Daniels, Calvin Johnson, Chief Medical Officer James Scally, Corrections Officer Jeffrey Henderson, Sergeant Thurston Moore, Senior Corrections Officer Javier Garcia, the (unnamed) Chief Medical Officer at High Desert State Prison, two unnamed nurses employed by High Desert State Prison, and a "health care provider" for the Nevada Department of Corrections (NDOC) under 42 U.S.C. § 1983.[1] This court screened Miller's complaint and allowed him to proceed on his Eighth Amendment claim for unsafe prison conditions against Daniels, Johnson, Scally, Moore, Henderson, Doe chief medical officer, Doe health-care providers, and Doe nurses; his Eighth Amendment claim for deliberate indifference to serious medical needs against Johnson, Moore, Scally, Jane Doe #1, Doe chief medical officer, and Doe health-care provider; his First Amendment retaliation claim against Moore; Fourteenth Amendment due-process property-deprivation claim against Garcia; and First Amendment retaliation against Garcia.

    Daniels, Johnson, Scally, Moore, Henderson, and Garcia now move for summary judgment on Miller's entire suit, arguing that he failed to exhaust administrative remedies under

---

[1] The Nevada Department of Corrections and the State of Nevada were dismissed as defendants by this court's screening order. ECF No. 8 at 13.

the Prison Litigation Reform Act (PLRA) and that they are entitled to qualified immunity on all of his claims.[2]  Because Miller did not properly exhaust NDOC's available grievance procedures, I grant the defendants summary judgment under the PLRA's mandatory exhaustion requirement and close this case.

**Background**

This case concerns grievances filed by Duston Miller, who is incarcerated at High Desert State Prison (HDSP).[3] In 2021, Miller filed an informal grievance alleging that Corrections Officer Javier Garcia searched and illegally seized his property as retaliation after Miller had unit officers and his spouse call the property room and filed an emergency grievance seeking the return of his property.[4] Miller's first-level grievance explained that he had recently been transferred to HDSP and did not receive his property the morning after his arrival as he had been promised.[5] According to Miller, Garcia "stated that since [Miller] had written a grievance and had people calling him, [Miller] would have to climb a cactus to receive [his] property."[6] Miller later requested second-level review of that grievance, which was rejected because Miller requested more than $500 in compensation and had failed to attach his first-level response.[7] NDOC's rejection memo directed Miller to resubmit his grievance, correcting the noted deficiencies, but Miller did not do so.[8]

---

[2] ECF No. 26.
[3] *See* ECF No. 26-3 at 3 ("You arrived from WSCC to HDSP on 11/02/2021.")
[4] ECF No. 26-4 at 4, 9.
[5] *Id.* at 13.
[6] *Id.* at 14.
[7] *Id.* at 19.
[8] *Id.*

2

About a year later, Miller initiated a new grievance process.[9] In an informal grievance, he alleged that medical staff and a corrections officer refused to rehouse him after his cellmate tested positive for COVID-19 and he tested negative.[10] Miller recounted that after he eventually tested positive and suffered severe symptoms, "the Sgt." accused him of "seeking to go over his head" and threatened to write Miller "a rule infraction for manipulating staff."[11] He demanded more than $100,000 as compensation for the physical and mental distress he suffered.[12] NDOC rejected this informal grievance, reasoning that Miller hadn't shown a loss or harm, hadn't articulated a remedy that would satisfy his claim, and requested more than $500 in compensation.[13] Miller did not resubmit his grievance and did not complete the grievance process for his COVID-related complaints.

## Discussion

**A.  The PLRA requires complete exhaustion of available administrative remedies.**

The PLRA requires prisoners to exhaust all available administrative remedies before filing a civil-rights action to redress alleged constitutional violations by prison staff.[14] The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules."[15] Of course, "[a]n inmate need exhaust only such administrative remedies as are 'available,'" which requires that

---

[9] *See* ECF No. 26-5.
[10] *Id.* at 3.
[11] *Id.* at 4.
[12] *Id.* at 6.
[13] *Id.* at 10.
[14] 42 U.S.C. § 1997e(a).
[15] *Woodford v. Ngo*, 548 U.S. 81, 91 (2006).

3

the procedures "are 'capable of use' to obtain 'some relief for the action complained of.'"[16]  In *Ross v. Blake*, the United States Supreme Court provided a non-exhaustive list of "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."[17]  An administrative remedy may be considered unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or if "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation."[18]

To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must "prove that there was an available administrative remedy" that the prisoner did not exhaust; the burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him.[19]  But "the ultimate burden of proof remains with the defendant."[20]  The trial court should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust."[21]

**B.  Miller failed to exhaust his administrative remedies, so his lawsuit cannot proceed.**

NDOC Administrative Regulation 740.05(4) states that "compensation for loss of personal property, property damage, personal injury, or any other claim arising out of a tort shall

---

[16] *Ross v. Blake*, 578 U.S. 632, 642 (2016).
[17] *Id.* at 643.
[18] *Id.* at 643–44.
[19] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Block*, 549 U.S. 199, 204 (2007) (cleaned up).
[20] *Id.*
[21] *Id.*

4

not exceed $500.00."[22]  All of Miller's relevant grievances in this case were rejected, at least in part, because he demanded more than $500 in damages in those grievances.[23]  Miller was told that he could resubmit those grievances if he corrected the deficiencies identified.  Miller concedes that he did not resubmit the grievances or completely exhaust the grievance process for his claims.

       *1.*     *NDOC provides an administrative claim process for tortious injuries.*

NRS 209.243 permits a prisoner to file an administrative claim with NDOC "to recover compensation for the loss of his or her personal property, property damage, personal injuries, or any other claims arising out of a tort" caused by prison officials.  The statute states that NDOC must evaluate each claim and, if the amount due is $500 or less, NDOC may "approve the claim for payment and submit it to be paid."[24]  But, if the amount due is more than $500, NDOC must submit that claim, "with any recommendations it deems appropriate, to the State Board of Examiners."[25]  The statute directs NDOC to "adopt regulations necessary to carry out the provisions of this section."[26]

---

[22] ECF No. 26-6 at 9.

[23] *See* ECF No. 26-4 at 19 (rejecting grievance 2006-31-32665, related to Miller's property-deprivation and retaliation claims against Garcia, under AR 740.05(4)); ECF No. 26-5 at 10 (rejecting grievance 2006-31-35212, related to Miller's medical-indifference claims, because Miller hadn't shown a loss or harm and his requested remedy exceeded $500).

[24] Nev. Rev. Stat. § 209.243(2).

[25] *Id.*

[26] Nev. Rev. Stat. § 209.243(3).

5

### 2. The PLRA required Miller to exhaust that process even though his desired remedies were not available through it.

The defendants contend that, had Miller refiled his grievance seeking an amount within the limits of the administrative process, he could have exhausted his remedies and then sought higher damages once his case was properly before this court.[27] Miller responds that the prison's procedure of rejecting claims on the basis that they seek more than the process allows has effectively rendered the administrative process unavailable to him, so he was not required to exhaust it.

Settled law forecloses Miller's theory. In *Booth v. Churner*, the United States Supreme Court confronted a grievance process that didn't permit an award of monetary damages at all.[28] The prisoner argued that "when a prisoner demands money damages as the sole means to compensate his injuries, a grievance system without that relief offers no 'available' 'remedy,'" so exhaustion of such a system is not required.[29] The High Court unanimously disagreed. It held that a prisoner who seeks only monetary damages in a grievance system that can't award them must nonetheless exhaust that process, reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."[30]

This *Booth* rule was reiterated in *Woodford v. Ngo*, in which the Court recognized that prisoners must "exhaust administrative remedies even [when] the relief sought—monetary

---

[27] ECF No. 39 at 2.

[28] *Booth v. Churner*, 532 U.S. 731, 735 (2001).

[29] *Id.* at 738.

[30] *Id.* at 739.

6

damages—cannot be granted by the administrative process."[31]  And when addressing exhaustion in Nevada's prison system in *O'Guinn v. Lovelock Correctional Center*, the Ninth Circuit stated even more clearly that "[a] prisoner must exhaust administrative remedies even when the prisoner's suit seeks monetary damages that are unavailable through the prison's grievance process."[32]  In short, under the PLRA, the administrative *process*, whatever it is, must be pursued to completion in order for the inmate to be able to seek his ultimate desired *remedy* through the court system.

      I find that *Booth*'s general rule applies here.  AR 740.05(4) caps inmate-compensation demands at $500.  When Miller's grievances were rejected for noncompliance, he could and should have cured their deficiencies by resubmitting them with a damages amount within the cap.  This would have exhausted the process and permitted him to then come to court to seek compensatory damages exceeding the cap.  Because Miller didn't do that for any of the grievances he filed, *Booth* and its progeny bar his suit.

      Miller's contention that NRS 209.243 requires a different result is not persuasive.  How NDOC reviews internal administrative claims is not relevant to the separate question of how a prisoner must exhaust his federal claims under the PLRA.  This court is not tasked with deciding whether NDOC's administrative regulations comply with statutory directives for internal claims-handling processes.  It must simply determine whether Miller exhausted his available remedies.  I acknowledge that the mismatch between NRS 209.243's process for internal claims and the PLRA exhaustion requirements may be confusing, but nothing prevented Miller from complying with AR 740's restriction on claims exceeding $500 in order to exhaust that administrative

---

[31] *Woodford*, 548 U.S. at 85.

[32] *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056 (9th Cir. 2007).

process before seeking a larger remedy in federal court.  I conclude that the defendants have shown that the administrative process was available to Miller, and because he failed to exhaust that process, his claims are barred by the PLRA.  So I grant summary judgment in favor of the defendants on this basis.[33]

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 26] is GRANTED.**  The Clerk of Court is directed to **ENTER FINAL JUDGMENT in favor of the defendants and against the plaintiff based on lack of exhaustion and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
September 19, 2025

---

[33] In addition to the named defendants, all of whom moved for summary judgment, Miller also sued several Doe defendants, including "Chief Medical Officer," "John Doe #1," "Jane Doe #1," and "Health Care Provider."  ECF No. 9 at 3–5.  I informed Miller that he could substitute named defendants in for those placeholder Doe defendants if he ascertained their identities during discovery.  ECF No. 8 at 7 n.27.  Miller did not substitute any named defendants for those Doe identities, so I consider the claims against those non-entities abandoned.